Your Honor, the first case on the block is C-17-0037, in the state of Illinois. The plaintiff is Apolline V. Alfonso Gallardo, also known as Oscar Garcia, also known as Grande, also known as Papa, defendant of Cali. Arguably on behalf of the defendant of Cali, he is hiding in a lamppost. Arguably on behalf of the plaintiff, Apolline, Ms. Jones. Good morning. Before you begin, both parties have filed motions to cite supplemental authority. Does either party have an objection to the other party's motion? Just, Your Honor, I believe I was given at 8.23 this morning, this Ball Fairgera case, the 1995 case. No, I do not have a supplementary. I may have mentioned the supplemental people to the attorney. Right. Yes, I did. But the other case that I didn't get in this lamppost this morning, I may or may not do, and if I did, if I gave it to her, I haven't done it. Do you have a copy? Do you have a copy for the court? I can give you a copy. That's not sufficient. That's not to be cited. Okay. Other than that, is there any objection to the Henry case? That was filed late, but no objection to it. All right. Ms. Lambros. Good morning, Your Honor. Your Honors. My name is Heidi Lynn Lambros, and I represent Alfonso Gallardo. As part of an investigation into Mr. Gallardo's suspected drug conspiracy claims, the Lake County State's Attorney's Office was issued a mutual overhear warrant for wiretaps to tap Mr. Gallardo's as well as other participants in this conspiracy's phone for a matter of two months. Judge Mazzetti, who was the original trial court judge in Mr. Gallardo's case, granted these wiretap warrants, which were attested to under oath by ASA Suzanne Willett on behalf of State's Attorney Michael Nearon. We're familiar with the facts of the case. What about the trial court's decisions denying the motion for a new trial where the trial court commented on that there was no case law in Illinois directly on point, and therefore, perhaps, Mr. Aglibos Casper may not have been deficient in his performance? Well, unfortunately, Judge Strickland obviously was well aware of this, of 108B, because he was, in fact, the judge in the Allard case. But there didn't need to be any case law. The statute's been on the books for a couple of decades. And it's a statutory construction argument. It requires by the State to apply. And you notice about the supplemented wiretaps, the State complied with every other part of the statute as far as probable cause, attestations, but they just didn't do what Allard requires it to do, which is have S.A. Nearon, who is the elected official in Lake County, to apply for the wiretaps. And we can see why we don't want State's attorneys, regardless of how high up they are, coming into judges' courtrooms and applying for wiretaps. This is a massive invasion of someone's privacy. Would it allow, if he had specifically assigned one person, would that have been sufficient? I think he should have. And I think that if you see in Gerardo, there was, in fact, some type of documented affirmance by S.A. Nearon saying, I'm delegating my authority to this ASA. But it requires not just a delegation. It requires a reason. The S.A. So they can't do a blanket delegation? No. So it would have to be in each and every case? Yes. In each and every case, you sign a letter, which I believe that would be sufficient, is if S.A. Nearon met with, I'm sure they probably did, met with S.A. Willett and said, I want a wiretap response. I mean, this is multiple, multiple people involving two months. S.A. Nearon signs off on it and says, I'm going to be absent. I'm not going to personally apply for the wiretap. But, Ms. Willett, I'm giving you my authority and my power. I'm absent or I'm infirm in some way, and I'm not going to sign up for it. It doesn't mean that this can't happen. Do we know in fact that it didn't happen? We don't. And that's, I think, part of the issue that the State may have. I supplemented the record with what I got from the Lake County Public Defender's Office, which she got from, you know, Mr. Casper. The remedy here can be to go back to have a hearing to find out if this delegation did occur. These wiretaps were under seal. As you notice, there's lots of blacked-out names. Those are names of citizens who had nothing to do with the investigation. I think they're DEA agents. Usually I've seen, you know, blacked-out names and phone numbers. So maybe there is, as part of the sealed record, there was a proper delegation. It just wasn't included here, and that's the reason why we need to have a hearing about this. Well, with respect to the issue that is at hand here, the federal counterpart, 18 U.S.C.A. 2518, was interpreted by the United States Supreme Court in U.S. versus Jordan. Are you familiar with the case? A little bit, yes, Your Honor. And it was interpreted the same way this Court interpreted our statute in Allard, correct? Correct. That the statute provides that evidence that was obtained where the authorization requirements are not met is unlawfully intercepted and subject to suppression. Yes. And there is no exception. There's no good-faith exception. In fact, in the statute itself, it specifically exempts the good-faith exception to generally the warrant requirements. So obviously our legislature was concerned about, I mean, when we think about what happened here, this is hours and hundreds of hours of recorded phone conversations of citizens who were talking about everything from maybe birthday parties to whatever. So we really want to narrow this. We want to make sure that we're not doing phishing expeditions and listening to people's phone calls when it's not necessary. And this was not an emergency case. This is not one of those cases where, you know, if this wasn't issued right now in this moment, they would have lost, you know, all evidence. They had two months. They issued two different wiretap authorizations. Neither one were assigned by Essay and Nearon. We had the first one in December 27, 2012, and then the second one to do another month of wiretapping. Neither one have any type of documentation that the State's Attorney of Lake County approved of these wiretaps. And the statute, as I read it, is very clear. I think that's why there's very little case law on it, because it's pretty clear about what the State has to do to get a wiretap, which is, Mr. State's Attorney, you have to authorize this. And we have Allard, which is the 2018 case, and then this case. But I think that, you know, Judge Strickland assumed the facts, as he would when a licensed attorney makes representations, that Essay and Nearon did not personally apply for the wiretaps. The State had an opportunity to counter that, and they didn't, either in their written motion or at the post-trial motion. And Judge Strickland basically said, well, Allard came out too late and there wasn't any supporting case law. But the Allard defendants didn't have any case law when they filed their motion. So it's a strict construction argument, and it just kind of, much like it missed the State, it missed defense counsel. Can you talk about some of your arguments regarding the sufficiency of the evidence? For example, the gang evidence in this case. It was not just the expert witness, was it? Wasn't there testimony from one of the co-conspirators that Palma was a co-carrying member of the Latin Kings? Well, yes. One of the co-conspirators has testified that he was aware that Palma was a member of the Latin Kings. But again, as we're going to get clarification from our Supreme Court in Murray, being in a gang is not necessarily illegal. What the statute, which being a gang member under the statute, you have to show that the Latin Kings are involved in this kind of, you know, multiple violations of the law. What about the expert testimony? There was expert testimony that the Latin Kings are involved in narcotics trafficking. They're involved in other criminal ventures. But particularly, narcotics trafficking, there was testimony from an expert  being a Latin King all the time. Isn't the jury entitled to infer that these transactions were knowingly engaged in by the defendant to further the activities of an organized street gang? Isn't that a fair inference from the evidence? Well, I think it's important. Mr. Palma did say that he was jumped out of the gang. Detective Amaro did have a picture of Mr. Palma hanging out with gang members and did testify that there are certain bars in the area that are gang bars. But the intent goes to Mr. Garrardo. He has to intend to further the activities of the Latin Kings. He has to know. He has to know. And there's no evidence that he even knew that Palma was in a gang. Palma seemed to imply that he was paying off a debt with Mr. Garrardo, $5,000 he loaned them, and he started selling drugs. But he sold drugs to gang members, which are probably the type of people who use drugs in bars. There's no evidence that Mr. Garrardo knew that or that he said, listen, I really want gangs to be furthered by this activity. And how are you furthered by just giving drugs to ingest? And I know the State points out that there were kickbacks, but there's no evidence in the record that he got kickbacks. Again, they listened to virtually every phone conversation my client had over two months. So if the Latin Kings were involved or Mr. Garrardo said, you know what, where are the Latin King bars? We want the Latin King bars. Certainly the State would have found this evidence. Again, mountains of judicial overhears that they listened to. And there's just no evidence of that, of my client's intent. And there was no argument to that effect? The evidence was the expert testimony together with Salgado's testimony. And also, you know, just to be fair, Detective Hollister did say that when he questioned Mr. Palma, Palma admitted to him that he was a Latin King. Well, yes. So can't the Charter of Fact make a reasonable inference?  Let's be honest, a lot of people who do drugs and use drugs and sell drugs are members of a street gang. But that doesn't mean that my client's intent when he conspired to sell and deliver drugs was to further the activities of the Latin Kings. And if you look at most of the cases, we have the defendant himself as a gang member. But that's not what happened here. There was no suspect that my client was in the gang, anything to do with the gang. So it's not just, you know, I think I pointed out in my reply brief that the legislature really wanted to make sure that we just didn't say, oh, you're in a gang, we're going to escalate your punishment here. We want to make sure that you're doing it to further the gang activities. And there's no evidence of that. What Mr. Palma believed and what Mr. Palma did, and if he personally thought I'm going to be furthering the gang, that intent and that motivation was never imputed to my client. And Mr. Palma himself didn't say that. The state didn't offer any evidence like, oh, did you talk to Mr. Gerardo about your gang activities? He didn't say that. You know, Mr. Palma said he wasn't in the gang. But there was no evidence to connect the gang part to my client. And I think this should be especially, not necessarily in this case, where if this court finds that the calculated criminal drug conspiracy is a mouthful, and street gang, you know, that the punishment is relatively the same. But, you know, there might be implications for other defendants. Again, these two statutes are kind of tricky. There's not any case law really on them. But I think that this court doesn't even have to wait for Murray, that this is much more of my client's intent to further the gang activities. Let me ask you this question, speaking of implications. If we find that the application for the surveillance was improper, you have all these other co-defendants who have already been quite guilty. Is there any implication, not that it's relevant here, but is there any implication related to them and their convictions being in jeopardy in some way? I believe that most of the, if not all, four other defendants essentially confessed. I mean, they kind of admitted to their participation. You have, you know, Noe Perez, he was found with drugs in his house. Yeah, but would he have been found with drugs in his house had there not been a surveillance? Yes. So I don't think that those, I believe they should all almost be done with their sentences by now, 2012, 10 years. I mean, they're all finished, so I'm not aware that they appeal anything. Justice Shostak's probably referring to post-conviction remedies, ineffective assistance of counsel for failing to file motions to suppress the 108B wiretaps. I don't even think this case has got that far. It seems that when you read the record that these four kind of, they got great deals. I mean, my client's doing 24 years at 75%. So, you know, they got day-for-day credit, the most being, you know, 12 years. So if they have post-conviction work, it's maybe in the mix. I don't even know if their counsel's filed any, you know, motions to suppress. But they also have their testimony and their statements, so I think it would be pretty difficult for them to come in and say, when they testified in my client's case, that they were committing to conspiring and to delivering drugs to, you know, upend that. I think the only person part of the conspiracy would be my client's brother, who also pled guilty. So as far as this affecting anyone but my client, I don't think so. And again, you know, these were, you know, I can't stress the importance of these. There's 28 essential confessions that my client gave on the phone talking about this, and connecting and corroborating for, you know, co-conspirators. My client wasn't found with any drugs. He wasn't found driving to and from the houses. And at a new trial, you know, the state can certainly bring in those co-defendants and have them retestify again, but not with these wiretaps. You would agree that, would you not, that the state offered pretty compelling evidence that the defendant, your client, and Palmer were involved in a conspiracy to sell cocaine? Yeah, I don't make any claim that the conspiracy to commit the drug offense was. If there's any reason for that argument there. And certainly in considering whether or not the substances that were being sold were cocaine, the jury was entitled to consider the evidence recovered from Palmer's house, that the white powder in Palmer's house wasn't fat cocaine, even though it was a smaller amount. I believe that goes to a proper inference, but these statutes, as I read them, and I could be wrong, require proof that the target crime was committed because they elevate the punishment. So people can conspire to deliver drugs, and you're punished based on the amounts. The amounts. But here, I'm talking about even if we take out the larger amounts that were found in the other home, it's clear that Palmer had in his possession cocaine that was part of this ongoing conspiracy that he picked up and pursued to the directives from the defendant, sold it, correct? He had it in his possession, but he didn't deliver it. He hadn't delivered it yet. But there was an ongoing conspiracy. Yes. And the fair inference is that the intent was that the business was continuing. As you mentioned, there was a pickup just four days before the arrest, correct? Correct. And the execution of the search warrant. So the fair inference is this is part of that cocaine that was picked up for delivery. Isn't that a fair inference? I think that's a fair inference, but I think that the statute requires more. I think we need Palmer delivering the drugs himself. Don't we use traditional concepts of accountability, constructive possession, that we use in every other type of criminal case? Why is it drug transactions? I have always asked this question. Why do we treat drug trafficking any differently than any other type of conspiracy? You're responsible for the acts of your co-conspirator, even if you are not aware of the specific act. But if those acts are in furtherance of your conspiracy, you are responsible for those acts, correct? That's traditional conspiracy law. That's traditional conspiracy, which he was convicted of. I think, and I understand that doesn't seem to make – I think the legislature is trying to make a difference with that by countering that. But the point is that it would appear that applying the Collins standard of review, the evidence here is sufficient if we follow traditional conspiracy law, correct? Traditional conspiracy law, yes. And what is the exclusion of traditional conspiracy law? It's conspiracy plus, let's call it. Like what? That it requires the target crime, which in here was delivery of a controlled substance, meaning that money was exchanged for a controlled substance, delivered. And it requires, if my client is accountable, it would require that Palmer delivered the controlled substance. But Palmer merely possessed the controlled substance. He himself didn't have any indica of drug selling. If he was going to sell it. Nor the intent. Nor the intent. They should have waited. I mean, that's what's kind of incredible. You have these guys on wiretaps. Why don't you just follow them and see what they're doing? You know, it would have been very easy for these police officers to catch them in the act. And smarter people than me, you know, have made the law that in order to deliver a controlled substance, we have to prove it's a controlled substance. Maybe everybody got fooled and it was flour. I mean, that's, you know, obviously it would have been a very lucrative flour delivery business. But it requires the proof. That's why we don't see a whole lot of delivery convictions, even without the conspiracy layer of it. Because it's hard to get what? Hard to get the seller and the buyer together where I exchanged money from you and I received an actual controlled substance. Your point about waiting and following and arresting at the time. Drug trafficking is laden with danger. It's very dangerous for law enforcement to interrupt a drug sale because it's very likely that one or both parties are armed with firearms. It's very common. So you can understand why the police are very careful in conducting surveillance and targeting and having crews to execute search warrants, et cetera. And I think they were. I come from Chicago where there's a bit more cowboy action going on where people are busting in. There is danger not only to the police officers, but to those people whose homes that they're entering. But they did. There's always that danger when you issue a warrant that you're going to come in. There's going to be somebody with a gun when you issue a lawful detained warrant. They were on a public street. They had enough time to kind of curate what was going on with this conspiracy. And, you know, to understand the layers. And they did. Because they got the wiretap warrants, they were able to kind of figure out who was going where what. So my point is, strictly speaking, this is going to be the first interpretation that I have of the criminal drug conspiracy, that it should be proof of delivery. Your time is up. You'll have time for rebuttal. Thank you. Ms. Kripke. May I please support? John Kripke on behalf of the people of the State of Illinois Council. I would like to address the overhears and the fact that they were allowed, that you allowed their supplementation into the record. It's clear from the trial court record that those overhear applications were never made part of the trial court record. And Judge Strickland never saw them. Those overhear, the wiretap orders are throughout, are discussed throughout the record. And they're also referred to in the state's answers to discovery. Correct? And they're what? I didn't hear the end of it. They're referenced in the state's answers to discovery. Yes. But they weren't before the trial court judge. And he said that twice. Well, can't the judge take judicial noticing? It's a piece of evidence. Right. It's a piece of evidence, and a piece of evidence has to be entered into evidence. It has to be before the court. And Judge Strickland was very clear. When they did their post-trial motion, he said, well, I'm not disputing what you're saying to me, he said to the PD, but you don't have any proof before me. Did the State offer any comment at all when this happened? Not that I recall. Okay. Please. The answer is no. Correct? The State did not contest their defense contention that there was not compliance with 108B. Correct? I believe they contested it, but they had their own arguments on it. Am I misunderstanding? No. No, that it was not signed by the State's attorney, and he was not sick or absent. That's the point. They did not contest that, correct? I don't believe so. And let me ask you this. The rules of professional conduct 3.3, candor toward the tribunal, wasn't the State obligated to disclose to the trial court that the order was not signed by the State's attorney as alleged in the post-trial motion? Doesn't the State have an obligation to correct a fact if there, in fact, is a misstatement or a misrepresentation? The State has an affirmative obligation to correct the record, correct? Yes, but the burden is on the defendant who is a proponent of that motion. The duty, the duty to be candid toward the tribunal is on all lawyers. Okay. And that the defense made an argument in their motion for new trial that was supported by the discovery materials tendered to them by the State. The State has an obligation to correct the record if there's a misrepresentation, correct? Where are you asking me where the misrepresentation is? That if the defense statement was inaccurate, the State had a responsibility to correct the record. The point is that it's tantamount to a judicial admission. It's silenced by the State in the face of that accusation. And, you know, the duty of candor towards the trial court is premised on the lawyer's obligation as an officer of the court to prevent the trial fact from being misled by false evidence. So the trial court basically, you know, said, well, the documents are not in front of us, but the State had an obligation to present the application. Did it not? This was when the judge was ruling and said, as he ruled, they made their arguments, and the court then said, I don't dispute what you are saying. He's not condemning the State. He said to the defense, I'm not disputing you. You have not presented to me evidence. You've made your point in your motions. Yes. And in your briefing. Why don't you turn to the merits of the claim? You didn't really argue the merits. Because I believe that this Court should not have supplemented the record on appeal with a piece of evidence that never appeared before the trial court under Supreme Court Rule 329. Do you have anything else to say on this point, then? Yes. Because what the defendant said as part of why this Court should supplement the record is that they allowed the motion to supplement the record. Right. And I believe it should be vacated. That's my version. And you are – you're – we have rejected those arguments. But I'm still presenting them. Would you have anything else to say on that? Yes, I do. What? So what I want to say is what the defendant said is, in order to supplement on appeal so this Court could adjudicate the ineffective assistance to the counsel claim, is the fact under the case that I just cited, that you allowed me to cite P. Henry, which says under paragraph 43, under the first prorong of Strickland, the defendant must prove that his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. At the time that the overhear applications were made, the prevailing professional norm, nobody challenged – nobody was challenging it. To go back retroactively and hold that counsel ineffective for something that was adjudicated three years after the post-trial motions is absurd. Let's not – let me ask you this question. Are you familiar with the United States v. Giordano? No.  That's the United States Supreme Court rules of 1974. Yes. And actually, I recalled it because I read it in law school. Everybody who took criminal procedures should be aware that for wiretaps, in the state of Illinois, if you went to law school here, it has to be signed by the state's attorney or by somebody designated by him in his absence or disability. And Giordano, the United States Supreme Court, 416 U.S. 505, 1974 case, the Court said the language of the statute, 2516, 18 U.S.C., 2516, fairly read, was intended to limit the power to authorize wiretap applications to the attorney general himself or to any assistant attorney general he might designate. Okay. So in other words, it's not new law. It's not new law. I didn't say it was new law. You said prevailing professional norms. Prevailing professional norms. Professional norms. What was going on with wiretaps throughout the State until the Allard case was objected to in, was it 2016? The State's attorney of Lake County was doing whatever. I don't know what was going on in the other 101 counties in this State. Well, the language of the statute is pretty clear. That may be true, but if it was being accepted and wasn't being challenged Do we know that? Well, you don't know it, and that's exactly right. And so how can you hold you would have to hold everybody, every time a new Every time there is a new Ms. Kirby. Yes. Article 108B provides for suppression if the face of the order is not in compliance. It has been on the books for decades. Okay. And Please. The American Bar Association standards, and everybody is generally familiar with the responsibility of any defense attorney to investigate the circumstances leading to his or her client's arrest, regardless of how guilty a defendant might be. It's an ethical obligation of every defense attorney to investigate the circumstances surrounding the defendant's arrest. And all you have to do is open your criminal code and read Article 108B. I don't contest that. So what are you talking about, then, about prevailing professional norms? The responsibility of every defense lawyer is to investigate the circumstances of his or her client's arrest. And the facts and circumstances here, the State, the weight of the evidence, which you cite throughout your brief, is the wiretaps. It corroborated everything that the co-conspirators testified to. It could be no plainer. It's as plain as the nose on your face. It's right in the statute. How can you say that? How can you argue that an attorney, even without case law, has no obligation to look at the statute that led to your client's arrest? I did not argue that. I did not argue that. What you said is that's not the prevailing professional norms. What I said was that in order to find the defendant, Mr. Casper, ineffective, this Court would have to look at what he did and what were the prevailing professional norms at the time. I understand what you're saying, that he had an obligation to look at the statute and then to have objected to say it's facially invalid or it's not facially invalid. With all due respect, you know that State's Attorney Erheim came in, he was elected in 2012, I think, correct? I don't know when he was elected. You say that we don't know what other counties are doing or other State's attorneys are doing, correct? I don't personally. Well, maybe the fact is that in all the other counties, the State's attorney is complying with 108B or they just simply do not use 108Bs in their particular county. We don't know. That's right. And that is why... If they weren't following the law, are you saying that people should get a break, the State should get a break because the law was not being enforced? No. I'm talking about whether or not the defense attorney should be found ineffective. But even more so... So the defense attorney should get a break because no one in Lake County was complying with the law. No. What I would like to say is this, that I believe the procedure, the proper procedural way to attack the defense attorney is not in the way it has been done in this Court. I know you have granted the motion to supplement, which I still disagree with. And I will disagree with it for another reason, that there was no affidavit attached to the certified supplementation. It had a sheet from Lake County, but no affidavit accompanying it explaining anything about those documents. So there was no explanation as to why things were crossed out. It's not a record. Or who crossed it out. Are you challenging the integrity of the defense counsel that filed the motion for new trial and attaching what was given to the defense by the State? I am not attaching anybody's integrity. I'm raising a question. Who did all the blackouts? Who wrote all the notes all over it? Was it the judge? Was it the person who submitted it? What I'm saying, when I just, when you asked me before about if I had a copy of a case to give you. The application was signed by ASA Willett, correct? I think one of them, two, I think two of them were. One was signed by nobody, and I'm not even sure why that is there. What I am challenging is how this Court can supplement with something that has blackouts in it with no accreditation to who did all of this. Who has that information? The State, correct? The State knows when I say the State, the Assistant State's Attorney is responsible for the investigation. And that is why when the motion to supplement is made. And how is that relevant to the allegation that there was not compliance with 108B with reference to signature or application by the State's Attorney himself? How is that even relevant to that issue? Because when you present a document in a court, you would, with all due respect, when you asked me about the case that I, you said, I said, well, mine's marked up. You said, well, we're not taking that. But you will take a piece of evidence that's been marked up? That's completely irrelevant. You are making an argument that we need an affidavit outlining who crossed out and who blacked out and who made marks on these documents. No, I'm not. I'm saying that those documents are not suitable for supplementation because we don't even know if it's the complete document. What we were told, we were told, but not in the affidavit from the PD. This came out of my file. I can assure you that it does not mean it's complete. We don't have an affidavit from this woman saying this is the complete supplement over here, applications that were given to me by the State. We simply don't know, which is why Rule 329 says, on appeal, this Court can't supplement. If there is a controversy, which there is, over the documents, it should be resolved in the trial. Is there a controversy over whether or not the State's attorney, Narahan, signed the applications? Is there a controversy? Yes. What's the controversy? The controversy is I don't know if there is more to the application where there might have been the exceptions appended to it. You are an attorney licensed to practice law in the State of Illinois, and you're on the State team. You can pick up the phone and call the State's attorney himself and ask, are these authentic? Did you sign it? You know, I've heard this. I've heard this. But that's not part of the record on appeal. It is. It's not part of the record on appeal if they did not, if the defense did not make the documents themselves part of the record on appeal. I can pick up the phone, and I often do call, and I do get information, but I can't submit it here because it's not part of the record on appeal. That's just a conversation between myself and between the State. Let's be fair to the defense. The wiretaps were a significant part of the State's case, correct? They were a part of it. They were a significant part. You say it in your argument regarding the sufficiency of the evidence. You continuously cite to the conversations, correct? I do cite to them. Okay. And the defense was putting forward what was given to them by the State in their motion for new trial, correct? I'm sorry. The defense attached to their motion for new trial, the new counsel attached what was provided in discovery by the State. They did not attach these documents to their motion. They attached the application. They did not. I'm sorry. They supplemented the record with what was given to them by the State. I don't know that. Okay. Your time is up. Thank you. Just briefly, after I filed my brief, which I thought actually the post-trial motion counsels a vermin on the record before the Court, which was not disputed by the State, that S.A. Nehrheim did not apply for the wiretaps. It was a foregone conclusion. The trial court didn't make a ruling, a prejudice ruling, regarding, oh, no, S.A. Nehrheim did in fact apply, and the State didn't object at all. The Court actually acknowledged that Nehrheim did. Yes. And probably because Judge Strickland had recently done the Allard case, which Judge Nehrheim similarly didn't do the same thing, the State called me out in their brief, and I called up the public defender and I said, hey, listen, what were you referring to? And she said I was referring to a sealed document, which is part of the common law record, but it's sealed. Judge Rossetti referred to it. The State referred to it. Defense counsel did a motion to suppress the wiretaps based on content, based on the fact that they were in Spanish and a bunch of other things. And then I supplemented the record with them because I thought that the State would like to see them, and I assumed that the State actually could get a copy of them pretty easily. So public defender didn't. I'm just providing to the Court what the trial Court had and that was under seal, much like the search warrants aren't commonly made part of the record on appeal. So for those reasons, I just wanted to make sure. Can a court take judicial notice of a search warrant that is filed with the circuit clerk? Yes, of course. And, you know, I'm sure if Judge Strickland had any questions, he just could have simply asked somebody in court, saying, hey, State, you know, is this right? And nobody said anything. Thank you. Thank you. The Court thanks both parties for their arguments today. The case will be taken under invitement. A written decision will be issued in due course. The Court stands in recess.